```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                     CENTRAL DIVISION at LEXINGTON
```

CHARITY FAITH ISON                )
                                  )
     Plaintiff,                   )
                                  ) Civil Action No. 5:10cv286-JMH
v.                                )
                                  )
MICHAEL J. ASTRUE, COMMISSIONER   )
OF SOCIAL SECURITY,               )    **MEMORANDUM OPINION AND ORDER**
                                  )
     Defendant.                   )
                                  )

                    **    **    **    **    **

This matter is before the Court on cross motions for summary judgment [Record Nos. 11 and 12][1] on Plaintiff's appeal of the Commissioner's denial of her application for Social Security Disability and Supplemental Security Income. The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Prior to the instant determination, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income (SSI). In a decision dated September 26, 2001, Plaintiff was found to be disabled due to depression with an onset date of May 1, 1995. (TR 19, 21, 48, 60). Subsequently, Plaintiff's disability insurance benefits were discontinued as of December 1, 2005,

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

following an initial disability review determination of medical improvement. Administrative law judge ("ALJ") Roger L. Reynolds, held a hearing and issued a decision finding that Plaintiff's disability ended on December 1, 2005, and she had not become disabled again since this date. (TR 19-28). The Appeals Council denied Plaintiff's request for review (TR 6-10), rendering the ALJ's decision final. Plaintiff exhausted her administrative remedies and timely filed this action.

At the time of the ALJ's decision, Plaintiff was 34 years old. (TR 418). She graduated from high school, and she worked on an assembly line and as a certified nurse's aide in 1994 and 1995. (TR 155, 418, 426). In 1997, Plaintiff reported using marijuana on a daily basis for several years, and denied use of any other illicit drugs. (TR 261). In 2002, she completed roughly 30 credit hours at Lees College. (TR 426). Plaintiff alleges continued disability due to nerves, anxiety, back pain, and because her spleen was removed after a motor vehicle accident in 1992. (TR 60, 69, 94, 422). The ALJ determined, following his consideration of the evidence and testimony compared with the most recent favorable or "comparison point decision" ("CPD"), that Plaintiff had the following severe impairments: polysubstance abuse in alleged remission, rule out borderline intellectual functioning, neck and low back pain of uncertain etiology. (TR 21). The ALJ found that depression was no longer a severe impairment. (TR 21). As of

December 1, 2005, Plaintiff had the residual functional capacity (RFC) to perform a modified range of light work, such that: (1) she could occasionally climb ramps or stairs, but no climbing ladders, ropes, or scaffolds; (2) she could not have concentrated exposure to vibration or hazardous machinery; (3) she was capable of entry-level work with simple, repetitive procedures; (4) without independent planning or goal setting; (5) without frequent changes in work routine; (6) without detailed or complex problem-solving; and (7) she needs to be in a primarily in object-focused environment with only occasional interaction with the general public. (TR 24). Relying on the plaintiff's work history and RFC, the ALJ elicited testimony from a vocational expert that Plaintiff could perform light or sedentary jobs, such as hand packer, assembler, laborer, grader/sorter, and surveillance monitor, that exist in significant numbers nationally. (TR 435-36). Considering the vocational expert's testimony, the ALJ found that, as of December 1, 2005, Plaintiff was no longer disabled under the Act. (TR 26-28, Finding Nos. 9-14).

In this appeal, Plaintiff argues that the decision is not based on substantial evidence because the ALJ mischaracterized the evidence presented, that the ALJ failed to develop the medical record appropriately and that the ALJ erred by failing to find a severe mental impairment or that the Plaintiff met a Listing 1.04 impairment. The plaintiff further argues that the ALJ failed to

correctly apply the definition of "medical improvement," failed to provide an accurate hypothetical question to the vocational expert and failed to give adequate consideration to the vocational expert's opinion that Plaintiff's impairments would remove her from competitive employment considering an adequate hypothetical. The Commissioner contends that the ALJ's determination was supported by substantial evidence in all relevant respects.

## II. OVERVIEW OF THE ALJ HEARING

In determining whether a claimant is disabled in cases such as this, the ALJ conducts the following analysis:

> 1) Is the claimant currently engaged in substantial gainful activity? If yes, and any applicable trial work period has been completed, the claimant's disability has ceased for the purposes of a Title II claim. If no, proceed to Step 2. See 20 CFR 404.1594(f)(1). For a Title XVI claim, engaging in substantial gainful activity is not a factor in determining whether a disability continues. See 20 CFR 416.994(b)(5).
>
> 2) In Step 2 for Title II claims and the first step for Title XVI claims, does the claimant have an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR 404, Subpart P, Appendix 1? See 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. If yes, then disability continues. See 20 CFR 404.1594(f)(2) and 416.994(b)(5)(I).
>
> 3) In Step 3 for Title II claims and Step 2 for Title XVI claims, has medical improvement occurred? See 20 CFR 404.1594(f)(3) and 416.994(b)(5)(ii). If medical improvement has occurred, proceed to Step 4 in Title II claims and Step 3 in Title XVI claims. If no medical improvement has occurred, skip to Step 5 in Title II claims and Step 4 in Title XVI claims. *Id.*
>
> 4) In Step 4 for Title II claims and Step 3 for Title XVI claims, is any medical improvement related to the ability

to work. See 20 CFR 404.1594(f)(4) and 416.994(b)(5)(iii). If yes, skip to Step 6 in Title II claims and Step 5 in Title XVI claims.

5) In Step 5 for Title II claims and Step 4 for Title XVI claims, does an exception to medical improvement apply? See 20 CFR 404.1595(f)(5) and 416.994(b)(5)(iv). There are two groups of exceptions. For Title II claims, these are found at 20 CFR 404.1594(d) and 404.1594(e). For Title XVI claims, these are found at 20 CFR 416.994(b)(3) and 416.994(b)(4). If one of the first group of exceptions applies, proceed to Step 6 for Title II claims and Step 5 for Title XVI claims. If one of the second group of exceptions applies, the disability has ceased. If no exceptions apply, the disability continues.

6) In Step 6 for Title II claims and Step 5 for Title XVI claims, are all of the claimant's current impairments severe in combination? See 20 CFR 404.1594(f)(6) and 416.994(b)(5)(v). If current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the disability has ceased. If they do, proceed to Step 7 for Title II claims and Step 6 for XVI claims.

7) In Step 7 for Title II claims and Step 6 for Title XVI claims, what is the claimant's residual functional capacity based on current impairments and can the claimant perform past relevant work? See 20 CFR 404.1594(f)(7) and 416.994(b)(5)(iv). Of the claimant has the capacity to perform past relevant work, the disability has ceased. If not, proceed to the last step.

8) In the last step for both Title II claims and Title XVI claims, does work exist that the claimant can perform, given residual functional capacity and considering claimant's age, education, and past work experience? See 20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii). If claimant can perform other work, the disability has ceased. If claimant cannot perform other work, the disability continues. Although a claimant continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that a claimant's disability has ended at this stage, the Social Security Administration is responsible for national economy that the claimant can perform, given residual functional

capacity, age, education, and work experience.

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

### IV. ANALYSIS

<u>The ALJ properly considered the medical evidence in the record and afforded appropriate weight to the medical opinions contained therein.</u>

Plaintiff takes issue with the ALJ's decision to afford less weight to the opinions of neurologist Christa U. Muckenhausen, M.D. and Scott B. Arnett, M.D., a family physician. Both Drs. Muckenhausen and Arnett were one-time examiners. Thus, their opinion is not afforded the same special deference or weight as

6

that of a treating physician.  Additionally, the ALJ may assign different weight to an opinion based on the opinion's consistency with the overall record on review.  *See* 20 C.F.R. § § 416.97(d)(4), 404.1527(d)(4).

It is the ALJ's responsibility to assess Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).  The ALJ may consider opinions from medical sources in making a determination regarding Plaintiff's RFC, but the final responsibility for assessing such an issue rests with the finder of fact. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); SSR 96-5p.  While the opinions of treating physicians are entitled to much deference, *see Warner v. Comm'r of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004), the deference given to any particular physician's opinion depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. *See* 20 C.F.R. § 404.1527(d); *see also Walters v. Comm'r of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Smith v. Comm'r of Social Security,* 482 F.3d 873 (6th Cir. 2007).  Furthermore, opinions on some issues, such as whether the claimant is disabled and the claimant's RFC, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case;

7

i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e); *see* Social Security Ruling (SSR) 96-5p. As the Sixth Circuit has stated, "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Warner*, 375 F.3d at 391.

Based upon the medical evidence in the record, the majority of Plaintiff's treatment occurred between 1992 and 2000, which is the period covered by the CPD decision. The last note regarding Plaintiff in the Comprehensive Care Center records was on February 21, 2001, following a cancelled appointment in January, 2001, which simply states that the Plaintiff is "no longer seeking services." Subsequently, Plaintiff completed 30 credit hours at Lees College in Jackson, Kentucky and was married.

Despite attending college and getting married, as well as evidence of Plaintiff's other activities outside of the home, Plaintiff claims that she was unwilling to leave the house to seek medical treatment for her back or her depression due to her mental condition. In her continuing disability interview in May, 2005, Plaintiff indicated that she watched television, feeds fish, goes to church and visits with neighbors. She also admitted during the hearing that she does go shopping and socializes.

Plaintiff did not seek any medical treatment until after she was notified that cessation proceedings had begun. With the exception of the consultive exams arranged by the Commissioner or

her attorney in connection with this disability insurance benefits and supplement security income eligibility review, the only treatment records from after the CPD were normal lumbar x-rays at Kentucky River Medical Center in June 2005, and evidence that she complained of lower back pain in October 2005. The hospital physician reported the following psychosocial findings during an exam in October 2005: (1) normal and appropriate behavior for age and situation; (2) adequate support systems available, independent ambulation, and able to perform all activities of daily living without assistance; and (3) demonstrates the ability and willingness to learn. These findings are consistent with the ALJ's determination that Plaintiff's depression had improved.

Examining physician, Rita Ratliff, M.D., performed a consultative examination on August 4, 2005. Although no objective tests or other medical records were available for her review, Dr. Ratliff concluded that Plaintiff's physical examination was normal and that there was no evidence of motor or neurological deficits, and Dr. Ratliff did not see any reason that her back pain would interfere with performing usual occupational activities. No restrictions were recommended.

Plaintiff first takes issue with the ALJ's decision to afford little weight to Dr. Muckenhausen's opinions. Plaintiff argues that it was error for the ALJ to characterize those opinions as being "taken directly from claimant's own assertions rather than

9

any objective findings." Because the ALJ did not find the extent of Plaintiff's claimed limitations to be credible, the ALJ rejected those recommendations as inconsistent with the record. Plaintiff argues that Dr. Muckenhausen reviewed and discussed MRI's of the Plaintiff's cervical and lumbar spine, and that she performed an examination, thus making it clear that Dr. Muckenhausen relied on more than just the Plaintiff's own statements in her evaluation.

However, the ALJ's explanation indicates that the *limitations* listed by Dr. Muckenhausen were taken straight from the Plaintiff's own assertions, rather than Dr. Muckenhausen's review of the record or own observations. Thus, despite Plaintiff's arguments to the contrary, the ALJ did not mischaracterize the evidence. As the ALJ noted, however, the limitations described by Plaintiff and noted by Dr. Muckenhausen were not supported by the evidence in the record as a whole. The ALJ also expanded on his rationale for discounting the opinions of Plaintiff's limitations by Dr. Muckenhausen and Dr. Arnett. The cervical and lumbar MRI findings were inconsistent with severe limitations because the objective findings indicated only slight disc bulging and "no evidence of nerve root entrapment or spinal stenosis." See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Thus, Drs. Arnett and Muckenhausen's reliance on Plaintiff's subjective assertions were but one factor in the ALJ's determination to discount the limitations as characterized by these physicians.

Moreover, the ALJ properly rejected the severe physical and mental limitations opined by these one-time examiners as inconsistent with the remainder of the record evidence. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). The ALJ noted the lack of treatment by Plaintiff for any physical or mental condition after the CPD despite having a medical card/insurance and Dr. Arnett, who did not review the MRI reports, overstated the lumbar MRI findings as disc "herniations" rather than the slight disc bulging noted by Dr. Muckenhausen, who actually reviewed the MRI reports.

Plaintiff also claims that Dr. Arnett's specialty, as a family physician, should not have been considered by the ALJ when determining what weight to give to his opinions. This argument is without merit. Generally, more weight should be given to the opinions of "specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." see 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). As Dr. Arnett was not a specialist in mental health, neurology, or orthopedics, the ALJ correctly considered this in his analysis.

Plaintiff further argues that the ALJ misrepresented the evidence by stating that Plaintiff qualified as a substitute teacher based upon her college courses. The ALJ relied on Plaintiff's own testimony in making this statement, which was apparently incorrect. Nonetheless, the vocational expert did not rely on any statements regarding Plaintiff's perceived ability to

11

qualify as a substitute teacher in answering the hypotheticals posed by the ALJ. The ALJ clarified that Plaintiff had not taken a test, was not certified, and had never actually worked as a substitute teacher. Therefore, given that the hypothetical at issue expressly instructed the vocational expert to assume a person with the same age, education, and past work experience as Plaintiff, Plaintiff's claim that the ALJ did not accurately describe her education and work background is without merit.

Plaintiff further argues that the ALJ mischaracterized the record by stating that there was evidence that Plaintiff worked following her determination of disability. This conclusion was based on a note by Dr. Haas, which indicated that Plaintiff had not been able to return to work after a car accident in 2000. Plaintiff has been disabled since 1995 and, outside of Dr. Haas' note, there is no evidence that she worked since that time. That said, this Court agrees with the defendant that, even assuming the Plaintiff meant that she did not work since 1995 when she was talking to Dr. Haas, any misstatement in the record or in the ALJ's assumptions was harmless in this regard. There is substantial evidence underlying the ALJ's analysis. Plaintiff does not argue, and this Court does not find, that the ALJ based the determination on Plaintiff's alleged work history after 1995 or that the result would have differed if this conclusion had not been drawn.

<u>The ALJ did not err by finding that Plaintiff did not suffer from a severe mental impairment and properly applied the medical</u>

12

improvement standard.

The ALJ's finding that, as of December 1, 2005, Plaintiff's depression was no longer a severe impairment is supported by substantial record evidence, such as examining psychiatrist Dr. Haas concluded that Plaintiff exhibited no signs or symptoms of a psychotic or organic mental disorder in July of 2005; reviewing psychologist Ann Demaree, Ph.D., also noted the absence of a mental impairment in July 2005; in October 2005, the hospital physician reported normal psychosocial exam findings; Dr. Demaree noted in November of 2005 that Plaintiff demonstrated significant medical improvement since the CPD (Tr. 346); and reviewing psychologist Edward Stodola, Ph.D., opined the absence of a mental impairment in February, 2006. Significantly, Plaintiff treated at Comprehensive Care Center a few times each month from July 1992 to June 1993, and sporadically in 1995, 1997, and 2000, however, she did not seek or receive any mental health treatment after the CPD despite having a medical card/insurance. Indeed, after the CPD, Plaintiff completed 30 college credit hours, got married, and engaged in activities such as going to church and occasionally visiting with neighbors, which are all inconsistent with disabling depression.

Plaintiff relies on her own statement and testimony to support her contention that she remains severely impaired. Although subjective complaints or symptoms are considered, the record must contain objective medical evidence establishing the underlying

13

mental disorder. See 20 C.F.R. §§ 404.1508, 416.908. While Plaintiff relies on one time examiners for her position, the ALJ properly weighed the opinions offered by Dr. Muckenhausen and Dr. Arnett and found that they were inconsistent with the with the weight of the other record evidence, including the opinions of mental health specialists.

<u>The ALJ properly determined that Plaintiff did not meet or equal Listing 1.04</u>

The Listing of Impairments, 20 C.F.R., Part 404, Subpart P, Appendix 1 (Listings or Listing), describe each major body system impairment considered severe enough to preclude a person from any gainful activity regardless of age, education, or work experience. See 20 C.F.R. §§ 404.1525(a), 416.925(a). Because vocational factors are not considered, Plaintiff must present precise clinical evidence that her impairments meet Listing 1.04. See 20 C.F.R. §§ 404.1520(d), 416.920(d). "At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments." *Reynolds,* 2011 WL 1228165, at *2 (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F.App'x 488, 491 (6th Cir. 2010)). If a claimant meets or equals one of the listings, then the claimant is deemed conclusively disabled and the analysis stops at that point. Further, whether Plaintiff meets the requirements of Listing 1.04 is an issue "reserved to the Commissioner" because it is an

14

administrative finding that is dispositive of the case. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Plaintiff fails to identify which of the discreet requirements Plaintiff allegedly meets to qualify for Listing 1.04. Listing 1.04, in pertinent part, requires the following:

> 1.04    Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

As Defendant points out, even assuming a diagnosis of degenerative disc disease, which is not clearly evident from the record, Plaintiff fails to demonstrate any of the required evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal

15

stenosis, thus, this argument is without merit. See 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 1.04(A)-(C); 20 C.F.R. §§ 404.1525(c)(3), 416.925(c).

The ALJ developed a full and fair record.

The ALJ's duty to develop a full and fair record does not extend so far as to require the ALJ to act as the claimant's advocate. In this case, Plaintiff participated at the hearing and was fully represented by counsel. Thus, the ALJ did not have a special duty to develop the record in this case, as the ALJ might have had in a case in which the claimant was not represented by counsel. *Duncan v. Sec'y of Health and Human Servs.,* 801 F.2d 847, 856 (6th Cir. 1986). Moreover, the claimant is responsible for producing medical evidence to establish the existence of an impairment, as well as its severity, although the Commissioner will make every reasonable effort to assist the claimant with obtaining his reports if given permission to do so. See 20 C.F.R. § § 404.1512(c), 416.912(c); 20 C.F.R. § § 404.1512(d), 416.912(d).

In this case, Plaintiff was represented by counsel at all stages of the hearing. Plaintiff's counsel was provided with a list of the evidentiary exhibits and provided an opportunity to provide additional or supplemental records as necessary. When Plaintiff mentioned during her hearing testimony that additional records may exist, the ALJ asked for a copy of the records. The attorney's response indicated that such records, if they existed,

were not likely to affect the proceedings. Under these circumstances, it appears that the ALJ filled his duty to adequately develop the record based on the information provided.

The vocational expert

The ALJ properly posed hypotheticals to the vocational expert, Betty Hale, and properly relied on the answers provided in the vocational expert's testimony. Based on a hypothetical accurately describing Plaintiff's vocational profile (age, education, and past relevant work) and RFC as of December 1, 2005, for a modified range of light work, the expert testified that Plaintiff could perform light or sedentary jobs, such as hand packer, assembler, laborer, grader/sorter, and surveillance monitor, that exist in significant numbers nationally. Considering the vocational expert's testimony, the ALJ found that, as of December 1, 2005, Plaintiff was no longer disabled under the Act. While Plaintiff claims the ALJ's hypothetical did not accurately describe her education and past work experience, the record confirms that Plaintiff graduated from high school and completed 30 hours of college courses. The vocational expert correctly noted that Plaintiff's last two jobs were as an assembler and nurse aide in 1994 and 1995. Further, upon questioning Plaintiff and the vocation expert prior to posing the hypothetical, the ALJ clarified that Plaintiff had not taken a test, was not certified, and had never actually worked as a substitute teacher. Accordingly, given that the hypothetical at

issue instructed the vocational expert to assume a person withe the same age, education, and past work experience as Plaintiff, Plaintiff's claim that the ALJ did not accurately describe her education and work background lacks merit.  While a hypothetical should accurately describe a claimant's abilities and overall physical and mental state based on the record, the hypothetical "is required to incorporate only those limitations accepted as credible by the finder of fact [ALJ]." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Accordingly, Plaintiff's claim that the operative hypothetical should have included the severe physical and mental limitations opined by one-time examiners Dr. Muckenhausen or Dr. Arnett, which the ALJ discounted.

### V. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That Defendant's motion for summary judgment [Record No. 12] be, and the same hereby is, **GRANTED**; and

(2) That Plaintiff's motion for summary judgment [Record No. 11] be, and the same hereby is, **DENIED.**

This the 29th day of September, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge